UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-11751-GAO

JAMES CHAPLIN,
    Plaintiff

VS.

LEWIS H. SPENCE,
NOREEN D. CHABOT,
and BARBARA A. HAWKES SULLIVAN,
    Defendants

Memorandum in Opposition to the
Defendants' Motion for Summary Judgment

ARGUMENT    THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AS NONE OF THE DEFENDANTS ARE ENTITLED TO IMMUNITY

    A.    The Defendants Are Not Entitled to Either Absolute or Qualified Immunity in the Instant Action

        1.    Absolute Immunity

The defendants are not entitled to absolute immunity in the instant case. In the case of Ernst v. Child and Youth Dept. of Chester County, 108 F.3d 486 (3rd Cir. 1997), the Court, while holding that social workers are entitled to absolute prosecutorial immunity for their actions in petitioning and making recommendations to a state court, emphasized that only qualified immunity is available for investigative or administrative actions such as opening and investigating child abuse cases.

Likewise, in Thomason v. SCAN Volunteer Services, Inc., 85 F.3d 1365 (8th Cir. 1996), the Court stated that a parent's interest is of the "highest order," and that the Court readily recognizes "the vital importance of curbing overzealous suspicion and intervention on the part of health care professionals and government officials." The Court went on to state that it must balance substantive due process interests of the parents against the interests of the child and state

McCormick
& Maitland
ATTORNEYS AT LAW
SUITE SIX
HAYWARD MANOR
195 MAIN STREET
FRANKLIN,
MASSACHUSETTS 02038
TELEPHONE: 508-520-0333
FACSIMILE: 508-520-0383

in being removed from a dangerous home setting. The Court then held that the government workers would be entitled only to qualified immunity, and then, only if the removal decision is properly founded upon a reasonable suspicion of child abuse. Id.

Accordingly, none of the defendants are entitled to absolute immunity in the instant matter.

2. Qualified Immunity

While the defendants may make a claim of qualified immunity in the instant case, they cannot demonstrate that they are entitled to it. A public official is entitled to qualified immunity only when two criteria are met: 1) that the right claimed to have been violated was clearly established at the time of the incident; and 2) whether it was objectively reasonable for the public official to believe that the action taken did not violate the clearly established right. Cinelli v. Cutillo, 896 F.2d 650, 654 (1st Cir. 1990); Yerardi's Moody Street Restaurant and Lounge v. Board of Selectmen, 878 F.2d 16, 20 (1st Cir. 1989).

The first criterion was certainly present in the instant case. A parent's interest in the care, custody, and control of his child is protected by the due process clause of the United States Constitution. Troxel v. Granville, 530 U.S. 57, 65 (2000). Indeed the Supreme Court of the United States has on numerous occasions recognized that the relationship between a parent and child is constitutionally protected. Quilloin v. Walcott, 434 U.S. 246, 255 (1978); Wisconsin v. Yoder, 406 Mass. 205, 231-233 (1972).

Thus the issue in determining whether the defendants are entitled to qualified immunity turns on whether the defendants were objectively reasonable in believing that taking custody of Lyndon Yeager Chaplin ("Yeager") from both his mother and father did not violate his parents' constitutional rights. The defendants cannot successfully argue that their actions in this case

McCormick
Maitland
ATTORNEYS AT LAW
SUITE SIX
WARD MANOR
MAIN STREET
FRANKLIN,
MASSACHUSETTS 02038
PHONE: 508-520-0333
FAX: 508-520-0383

were reasonable.

First, while the Department of Social Services may have had sufficient reason to believe that Yeager's mother should not have custody of him, there were no such grounds to warrant the removal of Yeager from his father's care.

During the course of its investigation, the Department of Social Services learned that Yeager's mother had significant psychological problems, including multiple personality disorder and paranoia. (Defendants' Memorandum in Support of Their Motion for Summary Judgment. page 13). DSS learned that Yeager's mother had been prescribed anti-psychotic medications for these conditions, but that she was no longer taking them. (Id., page 13-14). DSS further learned that Yeager's mother had a history of alcohol and cocaine abuse, refused a toxicity screen and left the hospital just before Yeager's birth. (Id., page 14).

By comparison, however, DSS learned nothing about the Plaintiff during its investigation that would warrant the agency removing Yeager from his father's custody.

<u>Defendant Noreen D. Chabot</u>

At her deposition, the DSS investigator and Defendant in this action, Noreen D. Chabot (hereinafter "Chabot") testified that when she took custody of Yeager on January 13, 2004, the Plaintiff did not constitute a threat to Yeager:

> "Q:   [D]o you believe that he would have physically injured the child?
>
> A:   No.
>
> Q:   Did you see any evidence of that?
>
> A:   No.
>
> Q:   Did you see any evidence that he was going to abandon the child, just take off?
>
> A:   No."

McCormick
& Maitland
ATTORNEYS AT LAW
SUITE SIX
HAYWARD MANOR
195 MAIN STREET
FRANKLIN.
MASSACHUSETTS 02038
TELEPHONE: 508-520-0333
FACSIMILE: 508-520-0383

> ....
>
> Q: On the 13th of January, 2004, you knew of nothing in Mr. Chaplin's background that would lead you to believe that he posed a threat to this child, did you?
>
> A: No."

(Deposition of Noreen D. Chabot, page 36-37, Exhibit A). Although Chabot made reference to some fairly nebulous information she learned regarding the Plaintiff's purported plan to arrange for Yeager's adoption without the mother's knowledge, that information was never sufficiently proven, or even investigated, so as to warrant removing Yeager from his father's care.

Information regarding this alleged secret adoption came from a social worker who had apparently received several telephone calls from a Katherine Porter in New Hampshire who identified herself as the pre-adoptive mother of Yeager. (Id. at 33). Chabot never spoke to this alleged adoptive mother, and Mr. Chaplin never mentioned a Ms. Porter to Chabot. Indeed, Chabot testified that she had no grounds to believe the Plaintiff was going to hand Yeager over to such a person:

> "Q: So, you have no reason to believe on January 13th that Mr. Chaplin was going to whisk this baby out and drive it to New Hampshire and give it to this Kathryn (sic) Porter?
>
> A: No."

(Id. at 53).

Further, Katherine Porter herself swore in her affidavit of January 28, 2004, as to the details of her involvement with the possible adoption of Yeager:

> "3. Lori Hurley and I had discussions concerning the possibility that I adopt her brother's child in the event her brother and his girlfriend decided to give the baby up for adoption.
>
> 4. I had previously tried to adopt another child and was familiar with the adoption process. Both Lori and I knew and understood that an adoption

McCormick
& Maitland
ATTORNEYS AT LAW
SUITE SIX
HAYWARD MANOR
195 MAIN STREET
FRANKLIN,
MASSACHUSETTS 02038
TELEPHONE: 508-520-0333
FACSIMILE: 508-520-0383

4

       would have to take place through a licensed agency. Both of us had been in contact with my attorney Margaret Hall concerning the proper procedure.

5. While I was hopeful that the baby would be given up for adoption, at no time was I told that the baby was available for adoption.

6. At no time did Lori Hurley or I ever attempt to avoid the proper procedures in Massachusetts or New Hampshire for the adoption of a child.

7. I contacted the hospital after the baby was born to let the assigned social worker know of my existence and interest in the baby in the event the natural parents decided to place the child for adoption. At no time did I ever indicate to anyone at the hospital that I was adopting that child or that I would be picking up the baby."

(Affidavit of Katherine Porter, Exhibit B).

Chabot clearly established in her deposition testimony that while DSS may have had grounds to remove Yeager from his mother's custody, they had absolutely no grounds to remove him from his father's. As such, Chabot was not objectively reasonable in believing that taking custody of Lyndon Yeager Chaplin from both his mother and father did not violate his father's constitutional rights; no qualified immunity applies.

<u>Defendant Barbara Hawkes Sullivan</u>

Likewise, Defendant Barbara Hawkes Sullivan (hereinafter "Hawkes"), was not objectively reasonable in her decision to remove Yeager from his father's care. Hawkes' apparent grounds for her decision were the purported adoption arrangements with Ms. Porter and the allegations of cocaine use by Mr. Chaplin. Neither ground was ever proven. Indeed, both were later proven to be false.

At her deposition, Hawkes testified that she had no reason to believe Mr. Chaplin was going to hand Yeager to an adoptive parent:

"Q: Do you have any information which would lead you to believe that on

McCormick & Maitland
ATTORNEYS AT LAW
SUITE SIX
HAYWARD MANOR
195 MAIN STREET
FRANKLIN,
MASSACHUSETTS 02038
TELEPHONE: 508-520-0333
FACSIMILE: 508-520-0383

> January 13, 2004 that Mr. Chaplin was going to take the infant and bring it to any prospective adoptive parent?
>
> A:   I have no definitive information that he had planned to do that on that date.
>
> Q:   Or on any date?
>
> ...
>
> A:   Yes, that's correct."

(Deposition of Barbara Hawkes, page 22, Exhibit C).

Further, while Hawkes testified that she learned from a social worker at the Alaska Office of Children's Services that "it was his understanding that both Ms. Brantley and Mr. Chaplin [were] cocaine involved" (id. at 14), that social worker, Christopher Morgan, stated that he never indicated that Mr. Chaplin was involved with cocaine:

> "2.   On January 12, 2004, I spoke with a member of the Department of Social Services for the Commonwealth of Massachusetts regarding Ms. Janis Brantley and Mr. James Chaplin.
>
> 3.   I was familiar with Ms. Brantley from prior experience with her in connection with my duties with the Office of Children's Services.
>
> 4.   I told the representative of the Department of Social Services that I had unsupported information that Ms. Brantley and her boyfriend were involved with cocaine in 2001. I did not mention the name of the boyfriend. It was not Mr. Chaplin to the best of my knowledge.
>
> 5.   I have no other information that Mr. Chaplin has ever been involved with any illegal drugs."

(Affidavit of Christopher Morgan, Exhibit D).

Hawkes simply had no grounds to believe either that Mr. Chaplin was arranging a secret adoption of his son, nor that he was involved in any illegal drug use. Thus, Hawkes had no objectively reasonable grounds to remove Yeager from his father's custody on January 13, 2004, and she is not entitled to qualified immunity.

McCormick & Maitland
ATTORNEYS AT LAW
SUITE SIX
HAYWARD MANOR
195 MAIN STREET
FRANKLIN,
MASSACHUSETTS 02038
TELEPHONE: 508-520-0333
FACSIMILE: 508-520-0383

Clearly, the actions of the defendants were not objectively reasonable as they had no reason to remove Yeager from his father's custody. The defendants are not entitled to qualified immunity.

Defendant Lewis H. Spence

Lastly, the Defendant Lewis H. Spence (hereinafter "Spence") is not entitled to qualified immunity as his letter to the Boston Globe of March 29, 2004 fell far beyond the scope of conduct protected by that doctrine.

Where at least a portion of the misconduct of Chabot and Hawkes might be deemed "investigative or administrative action[s], such as opening and investigating [a] child abuse case[]," thus creating the possibility of qualified immunity, Ernst v. Child and Youth Dept. of Chester County, *supra*, Spence's letter to the Boston Globe constituted no such action. DSS took custody of Yeager on January 13, 2004, and after several months of jurisdictional proceedings, Chaplin was finally awarded custody of Yeager by the Superior Court for the State of Alaska on March 25, 2004. Spence's letter appeared on March 29, 2004: any "investigative or administration" action in Yeagher's case had concluded.

At the very least, the topic of exactly what information Spence had about Chaplin's fitness as a parent when he wrote the letter is a genuine issue of material fact in dispute, and thus inappropriate for a motion for summary judgment.

Even assuming, *arguendo*, that the defendants did have reasonable grounds to remove Yeager from both his parents' custody on January 13, 2004, they certainly lacked such grounds to keep Yeager from his father until March 25, 2004.

Indeed, the affidavits of Christopher Morgan, dated January 27, 2004, and of Katherine Porter, dated January 28, 2004 clearly demonstrate that any impression or opinion DSS may have

McCormick
& Maitland
ATTORNEYS AT LAW
SUITE SIX
HAYWARD MANOR
195 MAIN STREET
FRANKLIN,
MASSACHUSETTS 02038
TELEPHONE: 508-520-0333
FACSIMILE: 508-520-0383

7

formed regarding the alleged secret adoption plans or drug use of Mr. Chaplin was rendered false. These affidavits prove that at some point, the defendants learned that their grounds to remove Yeager from his father's care were nonexistent.

At the very least, the precise date as to when the defendants learned of these truths is in dispute and is certainly material to whether the defendants wrongfully maintained custody of Yeager until March 25, 2004. Accordingly, summary judgment is inappropriate. Fed. R. Civ. P. 56(c).

> B. The Defendant, Lewis H. Spence, Is Not Entitled to Summary Judgment on Count II of the Complaint Because He Violated Massachusetts General Laws Chapter 119, Section 51E By Disclosing Lyndon Yeager Chaplin's Name to the Boston Globe

The Court should deny Spence's motion for summary judgment on Count II as he clearly violated the privacy of the plaintiff and his minor son, Yeager.

General Laws Chapter 119, Section 50E expressly prohibits the disclosure of names of juveniles involved in matters before the Juvenile Court Department of the Trial Court to anyone other than the child's parent, guardian, counsel, reporting person or agency, an appropriate review board, or a social worker assigned to the case. G.L. c. 119, § 51E. Such disclosure may only occur with the written informed consent of the child's parent or guardian, the written approval of the commissioner, or an order of a court of competent jurisdiction. Id.

By his letter to the editor of the Boston Globe of March 29, 2004, the defendant Spence wrote the following:

> "Adrian Walker's March 4 column not only failed to fully and accurately report the circumstances of the custody battle for Lyndon Yeager Chaplin, it also failed to accurately report my comments on the case ("Bureaucracy & a baby, City & Region")."
>
> "I never expressed doubt about the handling of the controversy by the Department of Social Services' Arlington office. I believe that it acted thoughtfully and

McCormick & Maitland
ATTORNEYS AT LAW
SUITE SIX
HAYWARD MANOR
195 MAIN STREET
FRANKLIN,
MASSACHUSETTS 02038
TELEPHONE: 508-520-0333
FACSIMILE: 508-520-0383

8

deliberately for the safety and well-being of the child.

"I only expressed uncertainty about what position we at DSS would take in the upcoming court case on custody, given the outstanding uncertainties about both mother and father.

"Walker made a classic child welfare error: He became over-invested in his beliefs about the father, and then refused to take in new data that should have prompted a reconsideration of those beliefs.

"But when Walker makes an error, the only consequence is a bad newspaper column. When we make an error, the result can be fatal."

(Lewis H. Spence, Commissioner Department of Social Services, Letter to the Editor, Boston Globe, March 29, 2004, See Exhibit E).

Spence's letter was an outrageous violation of Chaplin's privacy, and a blatant violation of G.L. c. 119, § 51E and Chaplin notified Spence of this violation by the March 30, 2004 letter from Chaplin's counsel to Spence (See Exhibit F). Yeager's case had been before the Norfolk Juvenile Court since DSS petitioned for the ex parte order of temporary custody on January 13, 2004. There can be no disputing the fact that Spence disclosed the name of a child involved in a Juvenile Court matter. He disclosed Yeager's name not to an enumerated person or agency authorized by the statute, but to the Boston Globe. By doing so, Spence clearly invaded the privacy of the plaintiff and his minor son, Yeager. Chaplin never authorized the release of his infant son's name or any of the information regarding Yeager's Juvenile Court proceedings (See Affidavit of James Chaplin, Exhibit G). Finally, Spence cannot defend his violation by claiming that his letter constituted written approval of the disclosure. No one petitioned Spence to issue any approval of the release of Yeager's name. Rather, Spence's letter constituted a deliberate disregard of the consequences of his actions and the prevailing laws.

The fact that Yeager's name had already been circulated publicly is of no consequence. Chaplin never released his infant son's name, nor authorized anyone else to release it. The fact

McCormick
& Maitland
ATTORNEYS AT LAW
SUITE SIX
HAYWARD MANOR
195 MAIN STREET
FRANKLIN,
MASSACHUSETTS 02038
TELEPHONE: 508-520-0333
FACSIMILE: 508-520-0383

9

that a reporter had already obtained that information from a source did not grant Spence license to subsequently violate § 51E.

Neither does qualified immunity protect Spence from Chaplin's allegations in Count II. As discussed *infra*, Spence's actions were clearly beyond the scope of that doctrine.

The Court should deny Spence's motion for summary judgment on Count II.

Conclusion

For the above-stated reasons, the Court should deny the Defendants' Motion for Summary Judgment.

Respectfully Submitted,<br>
The Plaintiff,<br>
BY His Attorney,<br><br>
/s/ Edward J. McCormick, III<br>
Edward J. McCormick, III<br>
McCormick & Maitland<br>
Suite Six – Hayward Manor<br>
195 Main Street<br>
Franklin, MA 02038<br>
(508) 520-0333

McCormick & Maitland
ATTORNEYS AT LAW
SUITE SIX
HAYWARD MANOR
195 MAIN STREET
FRANKLIN,
MASSACHUSETTS 02038
TELEPHONE: 508-520-0333
FACSIMILE: 508-520-0383