UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JAMES CHAPLIN,

    Plaintiff

v.                               C.A. NO. 04-11751-GAO

LEWIS H. SPENCE, et al.,

    Defendants

## DEFENDANT LEWIS H. SPENCE'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

### GENERAL OBJECTIONS

1. The Defendant objects to any request to the extent that it seeks information protected by the work product doctrine, attorney-client privilege, or any other privilege.

2. The Defendant objects to any request to the extent that it seeks personal information protected under G.L. c. 66A and any attendant regulations.

3. The Defendant objects to any request to the extent that it seeks to impose discovery obligations that exceed those imposed by the Federal Rules of Civil Procedure.

4. The Defendant objects to any request to the extent that it seeks to discover irrelevant information or is not reasonably calculated to lead to the discovery of admissible evidence.

5. The Defendant hereby incorporates each of the preceding objections into each of its specific responses, which are set forth below.



PENGAD 800-631-6989

EXHIBIT
Spence
6
7/21/06  LS

## Interrogatory No. 1

State your name, address, social security number, and occupation.

## Answer No. 1

**Objection.** The Defendant objects to that portion of the interrogatory requesting his social security number. Additionally, the Defendant objects to the request that he state his address, to the extent that this request seeks his residential address. This information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, the Defendant answers the remainder of the interrogatory as follows:
My name is Lewis H. Spence. I am the Commissioner of the Massachusetts Department of Social Services. I am currently employed at the Department of Social Services, 24 Farnsworth Street Boston, Massachusetts 02210.

## Interrogatory No. 2

Exhibit 1, to the instant interrogatory is a copy of a letter to the editor which appeared in the Boston Globe on March 29, 2004: with regard to the described letter to the editor, please state the following:

the identity of the author of the above described letter to the editor;

the date the letter was sent to the Boston Globe;

whether or not the letter as it appears as Exhibit 1 to the instant interrogatories is a complete an accurate copy of the letter that was sent to the Boston Globe.

## Answer No. 2

I was the author of the above described letter.

The above described letter was sent to the Boston Globe on or about March 11, 2004.

The above described letter appears to be a substantially complete and accurate copy of the letter that was sent to the Boston Globe.

**Interrogatory No. 3**

If you did not author the letter set forth as Exhibit 1, state who did author this letter.

**Answer No. 3**

N/A.

**Interrogatory No. 4**

When did you become aware of the "custody battle" for Lyndon Yeager Chaplin?

**Answer No. 4**

Mr. Chaplin intended to have Lyndon adopted without mother's knowledge.  This is based on information provided to me by Ms. Hoitt, LICSW, Social Services, Norwood Caritas.  She informed me that a woman from New Hampshire had been calling the nursery repeatedly since the birth of Lyndon.  This individual would inquire about the child and when she would be able to see him.  Ms. Hoitt further told me that she had been informed that this women had hired a lawyer whose purpose was to facilitate the private adoption of Lyndon.  Mr. Chaplin, knowing that this woman wanted to adopt Lyndon never told mother.  Mother had met this woman previously at the Hurley's home but was only introduced to her at that time as a friend of the family, not a possible adoptive parent for her child.  After Lyndon's birth, Mr. Chaplin still did not discuss this private adoption with mother.

**Interrogatory No. 5**

How did you become aware of the "custody battle" for Lyndon Yeager Chaplin?

**Answer No. 5**

The matter was first brought to my attention through a telephone call I received from the Governor's Office for Constituent Services.

## Interrogatory No. 6

By Exhibit 1, you state that: "Adrian Walker's March 4 column not only failed to fully and accurately report the circumstances of the custody battle for Lyndon Yeager Chaplin, . . ."; in what manner did this column fail to freely and accurately report the circumstances of the custody battle for Lyndon Yeager Chaplin?"

## Answer No. 6

Mr. Walker's column failed to include any information concerning the child's legal status as a member of an American Indian tribe recognized by the government of the United States.  The child's status as a member of such a tribe mandates the application of the Indian Child Welfare Act, which alters the legal standards and policies which the Department and the courts must apply to child welfare proceedings.  Mr. Walker's column also omitted any facts concerning the involvement of the tribe in the legal proceedings.

## Interrogatory No. 7

By Exhibit 1, you state that: "I only expressed uncertainty about what position we at DSS would take in the upcoming court case on custody, given the outstanding uncertainties about both mother and father"; with regard to this statement, state the following:

in what way was DSS uncertain about its position in the custody case?

what were the "outstanding uncertainties about both mother and father"?

at the time you wrote this statement, state each and every fact of which you were aware which in any way related to Mr. Chaplin's unfitness as a parent?

## Answer No. 7

The Department was uncertain as to the role that the tribe would play in the proceedings, and the manner in which this would control the direction of the proceedings.  Moreover, in any child custody matter, the Department's position must constantly be reassessed with the receipt of new evidence

or a change in the circumstances that initially led to the filing of the care and protection petition.  The law recognizes differing standards of proof for the initial filing of a care and protection petition, the initial grant of custody, and then the continuation of that custody award at a later date.  Consequently, a care and protection petition might reasonably be filed on somewhat limited evidence, but after the assessment and discovery processes, or a period of working with social services, the Department might later change its position.

The Department had limited information regarding both of the parents, their backgrounds and their intentions with regard to their child.  More specifically, the Department was uncertain as to the role that Mr. Chaplin and his sister played in communicating with an unknown woman in New Hampshire regarding her potential adoption of the child.

None

## Interrogatory No. 8

Identify the individual who authorized you to release or disclose?? the name of the minor child Lyndon Yeager Chaplin.

## Answer No. 8

**Objection**.  The interrogatory assumes that the Defendant took the action of releasing or disclosing the name of the minor child, or that authorization was required.  These assumptions have been denied.

Without waiving this objection, the Defendant answers the remainder of the interrogatory as follows:  The Department was not authorized by any individual to release or disclose the name of the minor child Lyndon Yeager Chaplin.

## Interrogatory No. 9

At the time you wrote the letter referenced as Exhibit 1, identify each and every individual with whom you have any communications which in any way relates to the custody case for Lyndon Yeager Chaplin.

-6-

**Answer No. 9**

At the time I authored the letter (Exhibit 1) I had
discussion with the following individuals in regard to the
case:  Lori Hurley; Mia Alvarado; and Adrian Walker.  It is
also likely that I discussed the matter with clinical staff
at the Department's Area Office or Regional Office,
although I do not specifically recall any such
conversations.


Signed under the penalties of perjury this ___20th___ day

of June, 2005.

                    By:

                    _____
                    Lewis H. Spence
                    Commissioner
                    Department of Social Services



As to objections:

THOMAS F. REILLY
ATTORNEY GENERAL


_____
Charles M. Wyzanski
BBO No. 536040
Assistant Attorney General
200 Portland Street
Boston, MA 02114
(617) 727-2200


Date: